OPINION
This is an appeal taken by the State pursuant to Crim.R. 12(J) from an order of the trial court suppressing evidence in this case.
On September 9, 1999, at around 8:30 p.m., Tipp City police officer Daniel Rittenhouse was dispatched to 726 Cheyenne Street on a loud noise complaint. Upon arrival, Officer Rittenhouse heard loud voices coming from the residence. The front door to the residence was open, and as Officer Rittenhouse approached he could see several people inside watching television. Officer Rittenhouse observed one female whom he recognized, Jessica Hicks, with an open can of beer in her hand. Officer Rittenhouse knew Jessica Hicks was under twenty-one years of age. Officer Rittenhouse also observed two other open cans of beer inside the residence.
Officer Rittenhouse announced his presence and advised the occupants that he was there on a loud noise complaint and that they needed to quiet down and close the door and windows. When one of the occupants started to close the front door, Officer Rittenhouse used his foot to prevent the door from closing. Officer Rittenhouse advised the occupants that because he had observed an underage drinking violation, he would need to see some identification from everyone. When the occupants did not respond to his request, Rittenhouse called for back-up and then stepped inside the residence and repeated his request for identification.
After everyone had produced identification, Officer Rittenhouse determined that no one present was twenty-one years of age. After additional officers arrived on the scene, Officer Rittenhouse asked all of the occupants to step outside. Officer Rittenhouse then advised the resident, Adam Cheadle, that he needed to enter the residence and retrieve the open cans of beer he had observed. Officer Rittenhouse asked Cheadle to go with him, and together they entered the residence, picked up the three open cans of beer, and poured them down the kitchen sink. Officer Rittenhouse then asked Cheadle if there was any more beer in the home. In response Cheadle opened the refrigerator revealing more beer, which Officer Rittenhouse confiscated.
All of the occupants were taken into custody and transported to the police station where they were given breathalyzer tests. Officer Rittenhouse admitted that he did not observe anyone in possession of an open can of beer other than Jessica Hicks. Moreover, Defendants Cheadle and Havens did not appear to be intoxicated and Officer Rittenhouse did not observe anything about their appearance or demeanor that caused him to suspect they had been drinking.
As a result of these events some of the occupants, including Defendants Adam Cheadle and Brad Havens, were charged in Miami County Municipal Court with one count of underage possession and/or consumption of alcohol in violation of R.C. 4301.632. Defendants filed a motion to suppress the evidence, challenging the warrantless entry of the home by Officer Rittenhouse.
Following a hearing, the trial court granted Defendants' motion to suppress, holding that there was no emergency or exigent circumstances that justified the warrantless entry of this home by police.
The trial court also stated that unless the State indicted in writing before December 29, 1999, that it had other evidence to present, the trial court would dismiss this case. The trial court subsequently approved Defendants' entry dismissing this case on December 29, 1999.
Pursuant to Crim.R. 12(J) the State of Ohio has timely appealed to this court from the trial court's decision and judgment entry granting Defendants' motion to suppress evidence.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS.
The State argues that Officer Rittenhouse's warrantless entry into this home was justified by the "exigent circumstances" exception to the Fourth Amendment's warrant requirement. According to the State, having observed Jessica Hicks commit the crime of underage possession of alcohol, it was reasonable for Officer Rittenhouse to take immediate action and enter the home without a warrant in order to prevent the evidence from being destroyed. State v.Wadsworth (August 11, 1999), Medina App. No. 2903-M, unreported.
A warrantless entry and search of a private residence is presumptively unreasonable under the Fourth Amendment. Payton v.New York (1980), 445 U.S. 573; Welch v. Wisconsin (1984),466 U.S. 740. Invasion of the sanctity of the home is the chief evilagainst which the Fourth Amendment's warrant requirement isdirected. United States v. United States District Court (1972),407 U.S. 297. The burden is upon the government to overcome thepresumption that warrantless searches of homes are per seunreasonable by demonstrating that the search falls within one ofthe few, well recognized exceptions to the warrant requirement.Welsh v. Wisconsin, supra; State v. Kessler (1978), 53 Ohio St.2d 204.
One such exception to the warrant requirement is an entry or search based upon exigent circumstances. This exception is founded on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant. Welch v. Wisconsin, supra. In suchemergency situations, police may have an urgent need to enter ahome in order to protect persons or property, render emergency aidto injured persons, or prevent the imminent destruction ofevidence. Katz, Ohio Arrest, Search and Seizure (1999), Chapter 10, pp. 177-187.
To justify a warrantless entry of a residence in order to seize a person or search for evidence of a crime under the rubric of exigent circumstances, not only must a true emergency exist which excuses the failure to obtain a warrant; police also must have probable cause that a crime has been committed. Katz, OhioArrest, Search and Seizure (1999), Section 10.4, p. 181, State v.Akron Airport Post No. 8975 (1985), 19 Ohio St.3d 49; State v.Jenkins (1995), 104 Ohio App.3d 265. A warrantless emergencyentry cannot be used as a fishing expedition for evidence of acrime. Katz, Ohio Arrest, Search and Seizure (1999), Sections10.1 and 10.5, pp. 178, 182-186; State v. Garrett (1991), 76 Ohio App.3d 57.
The right of police to conduct a warrantless search must be strictly circumscribed by the exigencies which justify its initiation. Mincey v. Arizona (1978), 437 U.S. 385. Exigentcircumstances may create a justification for a limited warrantlessintrusion and search, but the duration and scope of that intrusionand search are evaluated in terms of the emergency, and once thatemergency has been alleviated, further intrusion must besanctioned by a warrant. Katz, Ohio Arrest, Search and Seizure (1999), Section 10.5, pp. 182-186.
The only probable cause that a crime was being committed that Officer Rittenhouse had when he entered the house concerned underage consumption of alcohol on the part of Jessica Hicks. Because evidence that the State could use to prove that offense could readily be disposed of, the requirement that he obtain a warrant prior to entering for that purpose was subject to an exigent circumstances exception. There was, however, no probable cause to support a further intrusion or a general exploratory search of the home for additional evidence not associated with the limited probable cause police had regarding Jessica Hicks. To that extent, and on these particular facts, the warrantless entry and search of this home by police and the resulting arrest of these Defendants violated their Fourth Amendment rights. Therefore, the evidence obtained as a result thereof was properly suppressed by the trial court. State v. Davis (August 6, 1999),Wood App. No. WD-98-051, unreported; State v. Huff (June 10,1999), Highland App. No. 98CA23, unreported; State v. Rowe (May 13, 1998), Summit App. No. 18720, unreported.
The State's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DISMISSING SUA SPONTE THE CRIMINAL CHARGES FILED AGAINST APPELLEES.
In its Decision and Entry suppressing the evidence in this case, the trial court stated:
 It is further ordered that Defendant's Motions to Dismiss are granted unless the State, in writing before December 29th, 1999, indicates that it has other evidence it intends to present.
Defendants did not file any separate motion to dismiss the charges, but simply captioned their motion to suppress as a Motion To Suppress/Motion To Dismiss. On December 29, 1999, the trial court approved and signed an Entry prepared by Defendant's counsel dismissing the charges. In the interests of conserving judicial resources, the trial court apparently decided to dismiss this case because the State had failed to indicate that it had any evidence to present other than the evidence which the trial court had suppressed.
The State now argues that the trial court's dismissal was premature and improper because the State was never afforded an opportunity to prove its case and the evidence which the trial court suppressed was not the sole evidence which the State had to support the prosecution of this case. We agree.
We have not been directed to any authority, and we are not aware of any, which supports the notion that suppression of evidence in a case gives rise to some inherent authority in the trial court to dismiss the case before trial if the court believes that the State has no other evidence to present. That strategic decision, whether to proceed with the prosecution of the case after some of the State's evidence has been suppressed, is one that must be left to the State and cannot be usurped by the trial court. Of course, if the State makes the required certification and appeals the trial court's suppression of the evidence pursuant to Crim.R. 12(J), and if the State is unsuccessful in that appeal, then the State is barred from prosecuting that case, absent newly discovered evidence. That is not the situation presented here, however.
Here, the State had evidence to present other than that which the trial court suppressed. That evidence included the observations of Officer Rittenhouse before he entered this residence, in the event the State elected to proceed with the prosecution of these defendants for underage possession/consumption of alcohol. Whether that evidence is sufficient to sustain the State's burden of proof on the pending charge is a wholly separate question, which is not susceptible to disposition via some pretrial ruling but rather must be addressed after the State has presented its case-in-chief. The State must be afforded one full and fair opportunity to present its case.
The State's second assignment of error is well taken and is sustained. The judgment of the trial court dismissing this case will be reversed and the case remanded to the trial court for further proceedings.
 _________________________ GRADY, P.J.
BROGAN, J. and YOUNG, J., concur.