OPINION
Appellant, Tyrone J. Lavender, appeals the constitutionality of his guilty pleas to aggravated robbery in violation of R.C. 2911.01, and complicity to aggravated robbery in violation of R.C. 2923.03 and 2911.01. Both of these offenses included firearm specifications.
On May 11, 1999, appellant was indicted on one count of aggravated robbery, with firearm specifications; one count of complicity to aggravated robbery, with firearm specifications; and, one count of complicity to grand theft, with firearm specifications.
After entering an initial plea of not guilty, appellant withdrew his plea. On August 30, 1999, appellant pleaded guilty to aggravated robbery and complicity to aggravated robbery, with the firearm specifications. Pursuant to a joint sentence recommendation, appellant was sentenced to twelve years in prison: three years for each of the aggravated robbery counts, running consecutively; and, a mandatory three years for each firearm specification, running consecutively.
On December 29, 1999, appellant filed a motion for withdrawal of his guilty plea. The trial court denied appellant's motion on February 24, 2000. Appellant then filed the instant appeal, raising two assignments of error. At the same time, appellant filed a motion for appointment of appellate counsel. On October 25, 2000, this court granted appellant's motion, and appointed appellate counsel. This court also granted leave to appellant's newly appointed counsel to file a supplemental brief. Appellant's counsel did so, and submitted two additional assignments of error.
Appellant raises the following assignments of error:
 "[1.] The defendant-appellant was denied effective assistance of counsel in violation of the United States Constitution 6th Amendment; and the Ohio Constitution, article 1, § 10.
 "[2.] Defendant-appellant Lavender's guilty plea was involuntary [sic] made and obtained, in violation of the United States Constitution 6th and 14th Amendments, and also the constitution [sic] requirement that a guilty plea be knowingly and intelligently made.
 "[3.] The trial court erred by accepting appellant's guilty plea without first determining whether the appellant understood the effect of the plea, rendering the plea contrary to law.
 "[4.] The trial court erred by imposing consecutive sentences upon appellant."
 In appellant's first assignment of error, he claims that his conviction was unconstitutional because his right to effective assistance of counsel was violated. A guilty plea, however, waives the right to appeal issues of ineffective assistance of counsel, unless the ineffective assistance caused the guilty plea to be involuntary. State v. Lewis (Aug. 19, 1994), Trumbull App. No. 92-T-4687, unreported, 1994 WL 590303 at *3, citing State v. Barnett (1991), 73 Ohio App.3d 244. Appellant's first assignment of error is without merit, but his allegations of ineffective assistance of his counsel will be considered as a part of his second assignment of error.
In appellant's second assignment of error, he argues that his guilty plea was involuntarily obtained, because of the ineffective assistance of his counsel.
"Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, following Strickland v. Washington
(1984), 466 U.S. 668. A licensed attorney is presumed to have rendered effective assistance in representing a criminal defendant; thus, appellant bears the burden of proving ineffective assistance. State v.Kerns (July 14, 2000), Trumbull App. No. 99-T-0106, unreported, 2000 WL 973408 at *2.
In order to demonstrate ineffective assistance of counsel in the context of a guilty plea conviction, the defendant must demonstrate that the trial counsel's performance was deficient and that the defendant was prejudiced by the deficient performance in that it precluded the defendant from entering the plea knowingly and voluntarily. State v. Kerns (July 14, 2000), Trumbull App. No. 99-T-0106, unreported, 2000 WL 973408 at *3, citing State v. Sopjack (Dec. 15, 1995), Geauga App. No. 93-G-1826, unreported, 1995 WL 869968.
Appellant alleges that his trial counsel's performance was deficient because appellant's counsel: (1) "did not do anything, but told him to plea [sic] guilty," and that he would work at getting appellant the least prison time possible; (2) told appellant that if he went to trial, there was no way he would be found not guilty; (3) told appellant that if the federal government became involved in the prosecution, he could get up to 65 years in prison; (4) did not explain the law of complicity to appellant; and (5) did not speak to appellant's co-defendants about testifying for appellant.
Appellant's first allegation is that his counsel told appellant that he should plead guilty, and that appellant's counsel would try to make sure that he was sentenced to as little prison time as possible. An attorney has an ethical duty to act, not only as an advocate of his client, but also as an advisor. See E.C. 7-3. In a defense attorney's role as advisor, the attorney has a duty to advise his client on whether a plea is desirable. See E.C. 7-7. It is evident from an examination of the charges appellant faced, that his attorney's advice in this regard was reasonable. Appellant received the minimum sentence on each of his convictions. Furthermore, even if appellant had received more prison time than he might have been able to bargain for, "[i]n and of itself, what appears to be a poor [sic] bargained plea does not support a contention of ineffective assistance of counsel." State v. Honecker (June 27, 1996), Belmont App. No. 92-B-26, unreported, 1996 Ohio App. LEXIS 2694 at *9.
Appellant also claims that his counsel was ineffective because he warned appellant that he would be found guilty at trial, and that, should the federal government become involved in his prosecution, he could be subject to a far longer sentence. It is not ineffective assistance for an attorney to warn a client about the potential outcome of a trial, an attorney has a duty to inform the client of potential sentences and possible outcomes of trial. State v. Jackson (Mar. 31, 2000) Trumbull App. No. 98-T-0182, unreported, 2000 Ohio App. LEXIS 1423, at *8-9.
In addition, appellant argues that his attorney did not explain the law of complicity to him, and that, under appellant's interpretation of the law of complicity, he could not have possibly been found guilty of complicity to aggravated robbery. A review of the transcript of the plea hearing shows that appellant did know that he was charged with complicity to aggravated robbery, and that he pleaded guilty to that charge. An examination of the facts of this case shows that there was sufficient evidence to support a guilty finding on the charge of complicity to aggravated robbery. Appellant's contention that his attorney should have told him that he could not be found guilty of complicity to aggravated robbery is incorrect. As there is no requirement that an attorney must tell his client about theories of law from which the client can not benefit, this is not ineffective assistance.
Lastly, appellant claims that his attorney did not speak to his co-defendants about testifying on his behalf. An attorney's decision on the likely helpfulness of particular witnesses at trial and interviewing witnesses is a tactical decision, which an attorney is expected to make.Ohio v. Gruber (Nov. 9, 2001), Lake App. No. 2000-L-031, unreported, 2001 Ohio App. LEXIS 5057, *12. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance of counsel.State v. Clayton (1980), 62 Ohio St.2d 45, 48-49. "[E]rrors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." State v. Lundgren (Apr. 22, 1994), Lake App. No. 90-L-15-125, unreported, 1994 Ohio App. LEXIS 1722, at *53-54, quotingState v. Garrett (1991), 76 Ohio App.3d 57. Furthermore, appellant presents no evidence that his attorney did not interview his co-defendants or to what they would testify. We cannot infer ineffective assistance from a silent record, rather, appellant bears the burden of proving ineffective assistance. State v. Murphy (2001), 91 Ohio St.3d 516, 542.
Viewing the totality of the circumstances presented to this court, it is evident that none of appellant's alleged instances of ineffective assistance support a claim of ineffective assistance of counsel. Appellant has not shown that his counsel's performance fell below a reasonable standard of representation, and, thus, he cannot show that his counsel's performance prevented him from entering a knowing and voluntary plea. Appellant's second assignment of error has no merit.
In appellant's third assignment of error, he claims that his guilty plea was not knowing and voluntary because the trial court failed to determine whether appellant knew the meanings of "consecutive sentences" and "actual incarceration." Because of this claimed deficiency, appellant argues that he was not made aware of the maximum penalty involved, as required by Crim.R. 11(C)(2)(a).
Crim.R. 11(C)(2) provides:
 "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 Crim.R. 11(C)(2) creates two sets of requirements for a court to accept a guilty plea in a felony case. The first set is constitutional; the second set is nonconstitutional. To comply with the constitutional requirements, the court must explain to the defendant that he is waiving: (1) the Fifth Amendment privilege against self-incrimination, (2) the right to a trial by jury, (3) the right to confront one's accusers, (4) the right to compulsory process of witnesses, and (5) the right to be proven guilty beyond a reasonable doubt. State v. Nero (1990), 56 Ohio St.3d 106, citing Boykin v. Alabama (1969), 395 U.S. 238; State v. Ballard (1981), 66 Ohio St.2d 473, 478; State v. Higgs (1997), 123 Ohio App.3d 400, 407. The court must strictly comply with these requirements, and the failure to strictly comply invalidates a guilty plea. Higgs, 123 Ohio App.3d at 403.
The requirements listed in Crim.R. 11(C)(2)(a) are nonconstitutional. While literal compliance is the preferred practice, a guilty plea is valid as long as the court substantially complies with these requirements. Nero at 108. The Supreme Court of Ohio has stated that:
 "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. The test is whether the plea would have otherwise been made." Nero, 56 Ohio St.3d at 108 (citations omitted).
 Viewing the totality of the circumstances, we find that the trial court substantially complied with the Crim.R. 11(C)(2)(a) requirement that it determine that appellant understood the maximum penalty possible with his guilty plea. This determination is supported by ample evidence in the record of the plea hearing below.
During the court's plea colloquy, the court had the following exchange with appellant regarding appellant's understanding of the meaning of "consecutive sentences:"
"[THE COURT]: What does consecutive mean to you?
"[THE DEFENDANT]: Run mandatory.
"[THE COURT]: I'm sorry?
 "[THE DEFENDANT]: Run them mandatory, I mean consecutive means mandatory.
 "[THE COURT]: It means one after the other, it means running wild. It means that you serve the firearm penalty for the firearm specification before you start serving the term on the aggravated robbery; do you understand that?
"[THE DEFENDANT]: Yes, sir.
 "[THE COURT]: Consecutive means one after the other, running wild, so to speak, as opposed to concurrent, running everything together; do you understand that?
"[THE DEFENDANT]: Yes, sir."
 It is clear that, in spite of the court's inexplicable use of the phrase "running wild," the court gave a clear and understandable explanation of the meaning of consecutive sentences. In fact, when questioned about the meaning of consecutive sentences later in the colloquy, appellant demonstrated that he did understand the meaning:
"[THE COURT]: What does consecutive mean?
"[THE DEFENDANT]: Consecutive means run after another.
"[THE COURT]: One after another, right."
A review of the transcript of the guilty plea hearing also demonstrates that appellant understood that he would be sentenced to actual prison time. The court engaged in the following exchange with appellant:
 "[THE COURT]: Do you understand further any prison term that the Court imposes will be the actual term served? Do you understand that?
"[THE DEFENDANT]: Yes, sir.
 "[THE COURT]: What does actual term served mean to you?
"[THE DEFENDANT]: I do the time that you give."
Later, the court specifically informed appellant of what the sentence would be:
 "[THE COURT]: * * * [Y]ou will be sentenced for a term of incarceration in the Lorain Correctional Institute, or another institution designated by the Department of Corrections for a period of 12 years. Is that your understanding?
"[THE DEFENDANT]: Yes, sir."
 These exchanges show that appellant knew that he would be facing actual incarceration. As appellant subjectively understood that he would be going to prison, the trial court substantially complied with Crim.R. 11(C)(2)(a). Moreover, appellant failed to explain how the court's failure to inform him of the maximum sentence available for his offenses prejudiced him. Nero, supra. Appellant's third assignment of error is without merit.
In appellant's fourth assignment of error, he claims that the trial court erred in imposing consecutive sentences on him. Appellant argues that the trial court imposed consecutive sentences without making the findings required by R.C. 2929.14(E)(4).
R.C. 2929.14(E)(4) requires that, in order for a court to impose consecutive sentences on a defendant, it must find that:
 "[T]he consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 Appellant contends that the court did not make the proper findings. This contention is untrue. In its Judgment Entry of Sentence, filed September 3, 1999, the court made the following findings:
 "Pursuant to R.C. 2929.14(E), the Court finds for the reasons stated on the record that consecutive sentences are necessary to protect the public from future crime or to punish the Defendant and are not disproportionate to the seriousness of the Defendant's conduct and the danger the Defendant poses to the public, and the harm caused by the Defendant was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the Defendant's conduct.
 "Therefore, the sentences are to be served consecutively."
 Because the court made the proper findings on the record, the court's imposition of consecutive sentences was proper. Appellant's fourth assignment of error is without merit.
For the foregoing reasons, we affirm the judgment of the Lake County Court of Common Pleas.
O'NEILL, J., CHRISTLEY, J., concur.