The STATE of Ohio, Appellee,

v.

GARRETT, Appellant.

[Cite as *State v. Garrett* (1991), 76 Ohio App.3d 57.]

Court of Appeals of Ohio,
Portage County.

No. 89–P–2136.

Decided Sept. 9, 1991.

*David W. Norris,* Prosecuting Attorney, and *Thomas R. Buchanan,* Assistant Prosecuting Attorney, for appellee.

*Patricia A. Millhoff,* for appellant.

JOSEPH E. MAHONEY, Judge.

Appellant, Duane A. Garrett, appeals from his conviction and sentence for resisting arrest, obstructing official business, and disorderly conduct.

The following facts are relevant to this appeal.

Nikolas Garrett, the nine-year-old son of appellant, was absent from school on March 24, 1989, the last day of school before Easter vacation. On April 3, 1989, the first day back at school following vacation, Nikolas was asked by his teacher why he had been absent on the 24th. Nikolas indicated that his father had hit him and he did not come to school because of his bruises.

Although there were no visible signs of abuse at that time, the decision was made by the school principal to contact the Portage County Department of Human Services, Children Services Division, to investigate the allegation. Irene Pugh, a case worker, was immediately paged by her supervisor and informed that a child had been hit by his father and that the child's jaw might be broken. Pugh went directly to the Garrett home to investigate. This occurred in the afternoon of April 3, 1989.

Upon arriving at the Garrett residence, Pugh walked up to the front porch where appellant was sitting. Appellant's wife was also in the yard. Pugh identified herself and gave appellant one of her business cards. Appellant refused to talk to her and went into his house and closed the door. Concerned about the safety of appellant's son, Pugh telephoned the Portage County Sheriff's Department and requested assistance. Deputy James Fiegert arrived shortly thereafter and was apprised of the situation by Pugh. Deputy Fiegert attempted to talk to appellant but, after appellant pointed out the "No Trespassing" sign in his yard, appellant went back inside his house. Deputy Fiegert then radioed Deputy Michael Hostler, who was nearby making a routine traffic stop, and requested assistance.

Both deputies attempted to coerce appellant out of his house, but appellant did not respond. Deputy Hostler went to a neighbor's house to telephone the shift commander for further instructions. He was advised to obtain a telephone warrant from Judge John Enlow. Deputy Hostler obtained a telephone warrant for appellant's arrest based on the possible assault of appellant's son.

Deputies Hostler and Fiegert returned to appellant's front door and asked him to come out. They told him that they had a warrant for his arrest. When appellant failed to respond, the officers kicked the door in. They were then informed by a bystander that appellant had exited through the back door. The officers proceeded to chase appellant.

It is disputed by the parties exactly what happened when the deputies finally caught appellant. Appellant claimed that he surrendered without putting up a fight. The deputies, however, proceeded to hit him with their nightsticks, punch him in the face, and push and shove him. The deputies, on the other hand, testified that it was appellant that initiated the fighting. They claimed that they were unable to subdue him, as he kept breaking away from them and running towards another house. They admitted to using their nightsticks and fists in an effort to bring appellant under control. Appellant was eventually handcuffed and arrested. He was treated for cuts and bruises at Robinson Memorial Hospital.

Appellant was charged with three counts of assault, and one count each of resisting arrest, obstructing official business, and disorderly conduct. The matter was tried before a jury beginning on October 16, 1989. Appellant was found guilty of resisting arrest, obstructing official business, and disorderly conduct. One of the assault charges had been dismissed after the presentation of the state's evidence, and appellant was found not guilty on the other two assault charges.

On October 31, 1989, appellant was sentenced to sixty days in jail and fined $350 on each of the charges of resisting arrest and obstructing official business. On the charge of disorderly conduct, he was assessed with costs. The trial court suspended the jail sentence and placed appellant on probation for one year.

Appellant timely filed a notice of appeal with the following assignments of error:

"1. The State of Ohio failed to introduce sufficient evidence to prove the elements of resisting arrest and obstructing official business pursuant to R.C. Section 2921.33 and R.C. Section 2921.31 so as to deny the appellant due process of law as guaranteed by Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

"2. Defendant-appellant's convictions for resisting arrest and obstructing official business were against the manifest weight of the evidence. Thus, his convictions were in violation of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United States Constitution.

"3. Defendant-appellant was deprived of his right to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his counsel failed to file a formal motion to suppress an invalid telephone warrant."

Appellant relies, in part, on a favorable ruling on his third assignment of error to support his arguments on his first two assignments of error. It is, therefore, necessary to address the merits of appellant's third assignment of error first.

▮ In the third assignment of error, appellant contends that he was denied effective assistance of counsel because his trial counsel failed to file a motion to suppress the telephonic warrant. The failure to file a motion to suppress can only be considered reversible error if it prejudices appellant. *Kimmelman v. Morrison* (1986), 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305.

▮ In determining the validity of a claim of ineffective assistance of counsel, Ohio courts employ a two-pronged test. First, did the attorney substantially violate an essential duty to the client and, second, was the client prejudiced by that violation? *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 497–498, 358 N.E.2d 623, 626–627; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. In applying the case law, the test is whether the accused, under all the circumstances, had a fair trial and that substantial justice was done. *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus; *State v. Blagajevic* (1985), 21 Ohio App.3d 297, 299, 21 OBR 443, 445, 488 N.E.2d 495, 498.

▮ A strong presumption exists that the defendant's counsel rendered effective assistance, and the defendant has the burden to show otherwise. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Additionally, errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel. The fact that a better strategy may have been available does not rise to the level of ineffective assistance. *State v. Clayton* (1980), 62 Ohio St.2d 45, 48–49, 16 O.O.3d 35, 37–38, 402 N.E.2d 1189, 1191–1192.

▮ In the case *sub judice*, appellant asserts that his trial counsel's failure to file a motion to suppress the telephonic warrant prejudiced his case because the outcome of the proceedings would have been different. Appellant argues that the warrant was unlawful and, therefore, the arrest itself was unlawful, and a lawful arrest is one of the elements of resisting arrest. Additionally, the arrest for obstructing official business was unlawful as it was part of the "fruit of the poisonous tree."

It is apparent that there is no authority for the issuance of a telephonic arrest warrant in Ohio. Neither the Criminal Rules, the Ohio Revised Code nor case law provides for such an occurrence. The state, however, argues that a warrant was unnecessary because of exigent circumstances.

R.C. 2935.03(A) provides, in pertinent part:

"A sheriff, deputy sheriff, marshal, deputy marshal, [or] police officer * * * shall arrest and detain until a warrant can be obtained a person found violating, within the limits of the political subdivision, * * * a law of this state or an ordinance of a municipal corporation."

In the present case, it is clear that appellant was violating no law by staying inside his house and refusing to talk to the sheriff's deputies. Without a valid warrant or exigent circumstances, the deputies were without authority to enter appellant's house or arrest him. The United States Supreme Court has recognized that physical entry of one's home is "the chief evil against which the wording of the Fourth Amendment is directed * * *." *United States v. United States District Court* (1972), 407 U.S. 297, 313, 92 S.Ct. 2125, 2134–2135, 32 L.Ed.2d 752, 764. The warrant requirement is the principal protection against unnecessary intrusions into private dwellings. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 748, 104 S.Ct. 2091, 2096, 80 L.Ed.2d 732, 742. In *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639, the Supreme Court held that searches and seizures inside a home without a warrant are presumptively unreasonable. The court also stated:

" * * * The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their ... houses ... shall not be violated.' That language unequivocally established the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' *Silverman v. United States*, 365 U.S. 505, 511 [5 L.Ed.2d 734, 739, 81 S.Ct. 679, 683, 97 A.L.R.2d 1277]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.*, 445 U.S. at 589–590, 100 S.Ct. at 1381–1382, 63 L.Ed.2d at 652–653.

In the present case, it was the obligation of the trial court to determine whether exigent circumstances existed so as to negate the need for a warrant to enter the house. Only then could the trial court determine if there was an illegal arrest. In *State v. Hyde* (1971), 26 Ohio App.2d 32, 55 O.O.2d 52, 268 N.E.2d 820, the court held:

"Police officers, in the exercise of their duties to preserve the peace, and to protect persons and property, have the right to enter a private dwelling without a search or arrest warrant, when, in response to an emergency call

for help, they have reasonable grounds to believe that an emergency exists." *Id.* at syllabus.

However, the limitation is that such a warrantless emergency entry must be confined to quelling the emergency. The entry cannot descend into an evidence gathering expedition.

The trial court was denied the opportunity to determine whether exigent circumstances existed because of appellant's trial counsel's failure to file a motion to suppress. Although it is not clear whether such a motion would be granted, the possibility that it would have been warranted its filing by appellant's counsel.

By not filing a suppression motion, appellant's trial counsel substantially violated an essential duty owed to appellant. The legality of the arrest was critical to appellant's defense.

For the foregoing reasons, appellant was denied effective assistance of counsel. Appellant's third assignment of error is well taken.

In the first and second assignments of error, appellant contends that his convictions for obstructing official business and resisting arrest were not supported by sufficient evidence and were against the manifest weight of the evidence.

A review of the transcript from the trial court reveals that there was sufficient evidence presented upon which appellant could be found guilty of obstructing official business and resisting arrest. While the arrest itself may not have been based on a valid warrant, it may have been necessary due to exigent circumstances. That will have to be determined upon remand. We cannot conclude, however, that the convictions were not supported by sufficient evidence or were against the manifest weight of the evidence. Once a proper suppression motion is presented to the trial court and ruled on according to law, appellant may or may not be convicted of the crimes in question. It would be premature for this court to decide those issues at this point in time.

Appellant's first and second assignments of error are without merit.

For the reasons set forth herein, the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, P.J., concurs.

FORD, J., concurs in judgment only.